**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON – SEATTLE DIVISION**

| | | |
|---|---|---|
| LOZANO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | **2:22-mc-00078-RSL** |
| | ) | |
| v. | ) | |
| | ) | |
| DOE, et al., | ) | |
| | ) | |
| Defendants | ) | |

**MOTION OF STEFANIA JOANNE RAMOS BIRCH ESQ.**
**TO QUASH THIRD-PARTY SUBPOENA AND FOR A PROTECTIVE ORDER**

Pursuant to Federal Rule of Civil Procedure 45(d)(3), non-party, Stefania J. Ramos Birch, Esq. ("Mrs. Ramos"), hereby moves to quash the subpoena Plaintiffs Alexandra Lozano ("Plaintiff Lozano"), Angelyne Lisinski ("Plaintiff Lisinski"), and Giulia Fantacci ("Plaintiff Fantacci") served upon her on September 16, 2022 which seeks her deposition and the production of documents in *Lozano, et al., v. Doe, et al.*, 2:22-cv-03089-ALM-KAJ, pending in the United States District Court for the Southern District of Ohio (Columbus) as the Ohio forum lacks personal jurisdiction over her; or, in the alternative, because the subpoena is overly broad, unduly burdensome, lacks proportionality, seeks information not relevant to the claims in the Plaintiffs' Complaint, and non-party document discovery is not permitted by the order granting expedited discovery issued by the United States District Court for the Southern District of Ohio. Alternatively, Mrs. Ramos requests that this Court issue a protective order pursuant to the Fed. R. Civ. P. 26(c)(1) limiting the deposition and document discovery to the issue of personal jurisdiction, *i.e.*, her contacts with Ohio and Plaintiff Lisinski, the sole Ohio Plaintiff, and excluding from discovery the catchphrase "arreglar sin salir". Mrs. Ramos further requests a protective order to limit discovery to a deposition only to determine the extent of her knowledge regarding the defamatory campaign alleged in the Complaint and to her knowledge of the

1

defamers' identities. She also requests a protective order to stay discovery pending the outcome of this motion to quash pursuant to Fed. R. Civ. P. 26(c)(1). If so ordered to comply with the subpoena, Mrs. Ramos requests a 90-day extension due to her advanced pregnancy, imminent due date, and pre-planned maternity leave.

A copy of the subpoena served upon Mrs. Ramos is attached as Exhibit A; Mrs. Ramos' declaration is attached as Exhibit B; the Plaintiffs' Motion for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference is attached as Exhibit C; the order granting leave to serve third party subpoenas is attached as Exhibit D; a copy of the initial Complaint is attached as Exhibit E; and a copy of the letter entitled "*Immediate Action Required – Removal of Defamatory Posts on Facebook*" dated March 11, 2021 is attached as Exhibit F. Mrs. Ramos respectfully requests the Court's speedy determination of this matter to provide clarity for all concerned regarding whether the subpoena is invalid and/or should be quashed.

## MEMORANDUM IN SUPPORT

### I. BACKGROUND AND INTRODUCTION

Mrs. Ramos is an immigration attorney who has at all relevant times resided in Washington State and has been licensed in the States of Washington and California. She owns and operates a solo immigration law practice in Lynnwood, Washington where she primarily works with the immigrant community offering legal services in the areas of deportation defense, family-based petitions, asylum, citizenship, residency, and humanitarian benefits such as protection under the Violence Against Women Act ("VAWA"), U-Nonimmigrant Status, and T-Nonimmigrant Status.

As detailed in the attached declaration, Mrs. Ramos and Plaintiff Lozano have law offices in the same general area and have shared mutual clients in common. In approximately February of 2021, Mrs. Ramos posted a comment on a thread in a private, attorney-only Facebook group to

voice her concerns regarding ethical issues related to Plaintiff Lozano's practice of immigration law in the State of Washington. Previously, a client consulted with Mrs. Ramos for a second opinion after first consulting with Plaintiff Lozano, and indicated that Plaintiff Lozano encouraged him/her to retain her for legal services in the amount of $12,000 to apply for an immigration benefit under VAWA. In order to qualify under VAWA, there must be a finding of battery or extreme cruelty by a U.S. citizen or lawful permanent resident family member. When the client consulted with Mrs. Ramos, s/he unequivocally indicated that s/he was not subjected to battery or extreme cruelty by their U.S. citizen or lawful permanent resident family member and yet she was encouraged by Plaintiff Lozano to mislead the government in an application for VAWA benefits. Thus, Mrs. Ramos determined that her client was ineligible for VAWA as previously claimed by Plaintiff Lozano and that Plaintiff Lozano was encouraging him/her to mislead the government for financial benefit ($12,000). Her comment on the Facebook thread indicated her concerns to a private group of immigration law practitioners.

On the aforementioned Facebook thread, numerous other immigration attorneys posted similar client experiences with Plaintiff Lozano and expressed serious concerns over her business practices as well as deceptive tactics to retain clients. For context, most non-immigrants who enter the U.S. without inspection must leave the U.S. in order to regularize their immigration status, save for a limited number of exceptions. However, Plaintiff Lozano uses the tagline "arreglar sin salir" (that she has since trademarked) meaning "fix without leaving" heavily in her social media marketing, as though she can help most people to regularize their status without having to follow the normal process of leaving the U.S. She relies on a narrow exception to the general rule based on VAWA (which requires a finding of battery or extreme cruelty by a U.S. citizen or lawful permanent resident family member). Plaintiff Lozano's business practices and social media

marketing has been highly controversial within the immigration legal community and resulted in immigration practitioners discussing her practices on the aforementioned Facebook thread.

On March 11, 2021, Plaintiff Lozano, through counsel unauthorized to practice law in the State of Washington, sent a letter to Mrs. Ramos via email entitled "*Immediate Action Required – Removal of Defamatory Posts on Facebook*" (essentially a cease-and-desist demand), demanding the removal of the allegedly "defamatory" comment Mrs. Ramos left on the Facebook thread within 5 calendar days or threatened the initiation of litigation against her. Counsel for Plaintiff Lozano sent similar cease-and-desist emails to approximately 25-30[1] attorneys located all over the United States on or around the same timeframe. Thereafter, the Facebook administrator of the private group almost immediately removed the thread in its entirety, and Plaintiff Lozano initiated no legal proceedings against Mrs. Ramos. The matter appeared to be resolved.

On August 10, 2022, Plaintiffs filed a Complaint against numerous unidentified Defendants in the Southern District of Ohio (Columbus), where only Plaintiff Lisinski resides and is licensed to practice law. (As the Defendants are unidentified, the residency of the Defendants is presently unknown). Concurrently with the filing of the Complaint, Plaintiffs filed a Motion for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference, which was granted by the court on August 12, 2022.

On September 16, 2022, Mrs. Ramos, a non-party to this litigation, was served with a subpoena to appear for deposition and to produce documents regarding her text messages, e-mails, and social media for the Plaintiffs' names, any variations thereof, their law firm names, and the

---

[1] This is Mrs. Ramos' best approximate guess as to how many cease-and-desist letters were sent to immigration attorneys across the U.S.

phrase "arreglar sin salir"[2] from June 2020 to present. The subpoena requests document discovery *and* deposition testimony on October 7, 2022 at 10:00 am at Plaintiff Lozano's office in Tukwila, Washington.

On September 16, 2022, Mrs. Ramos informed Plaintiffs' counsel of her advanced pregnancy and imminent delivery date. Plaintiffs' counsel verbally offered a discovery extension until November or December, which was appreciated. On September 21, 2022, Plaintiffs' counsel then requested via email document discovery by October 14, 2022 and a Zoom deposition during the third or fourth week of September. On September 23, 2022, Mrs. Ramos responded via email with correspondence from her medical provider indicating that her due date is October 17, 2022, she is having pregnancy-related medical complications, and therefore cannot be expected to be in court or sit for a deposition at any point after October 1, 2022. She indicated that her earliest availability would be December. On September 27, 2022, Plaintiffs' counsel requested document production and deposition on December 12.

In response to the non-party subpoena, Mrs. Ramos has filed the instant Motion to Quash.

## II.    TIMELINESS

"[T]he nonparty served with the subpoena duces tecum may make objections . . . within 14 days after service or before the time for compliance, if less than 14 days." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005).

Mrs. Ramos was served the subpoena at issue on September 16, 2022 and timely filed the instant Motion to Quash within the required 14-day period. Thus, the instant motion is timely filed.

## III.    VENUE

---

[2] In addition, we note that both the Plaintiffs' motion seeking authorization to serve discovery upon third parties and the order of the Magistrate Judge granting that motion relied exclusively on case law supporting the issuance of subpoenas to non-party internet service or platform providers as opposed to individual users.

Fed. R. Civ. P. 45 states that "the court for the district where compliance is required" has primary authority over all subpoena-related motions. Because Mrs. Ramos is located in Lynnwood, Washington, and compliance with the subpoena is required in Tukwila, Washington (at Plaintiff Lozano's office), this Court is the proper venue for the instant motion.

## IV.    SUMMARY OF RELEVANT LAW

### A.    Personal Jurisdiction

Since *International Shoe Co. v. Washington*, the hallmark principle of due process has been that a court may exercise jurisdiction over a person or organization only after it has been established that the person or entity possess "minimum contacts" within the forum "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. 310, 316, 66 S.Ct. 154, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

A district court must have personal jurisdiction over a nonparty in order to compel it to comply with a valid discovery request under Fed. R. Civ. P. 45. *See, e.g.*, *Gucci Am. v. Bank of China*, 768 F.3d 122, 141 & n.20 (2d Cir. 2014); *In re Application to Enforce Admin. Subpoenas Duces Tecum of the S.E.C. v. Knowles,* 87 F.3d 413, 418 (10th Cir. 1996) (requiring that a Bahamian nonparty have minimum contacts with the United States before holding it subject to an administrative agency subpoena); *Ariel v. Jones,* 693 F.2d 1058, 1061 (11th Cir. 1982) (upholding the quashing of a subpoena "[i]n view of the minimal contacts of the [nonparty] with [the forum]"); *Elder–Beerman Stores Corp. v. Federated Dep't Stores, Inc.,* 45 F.R.D. 515, 516 (S.D.N.Y. 1968) (quashing a document subpoena based on complete lack of contacts with the forum); *see also* 16 Moore et al., *Moore's Federal Practice* § 108.125, at 108–48 (3d ed. 2008) ("A nonparty witness cannot be compelled to testify at a trial, hearing, or deposition unless the witness is subject

to the personal jurisdiction of the court."); Gary B. Born, *International Civil Litigation in United States Courts* 865 (3d ed. 1996) ("[A] non-party witness can only be compelled to produce documents if it is subject to the court's personal jurisdiction."). Specific or "case-linked" jurisdiction "depends on an affiliation between the forum and the underlying controversy (*i.e.*, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Walden v. Fiore*, 571 U.S. 277, 134 S. Ct. 1115, 1121 n.6, 188 L. Ed. 2d 12 (2014) (internal quotation omitted); *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017).

Rule 4 of the Fed. R. Civ. P. directs federal courts to follow the pertinent personal jurisdiction laws of the state courts where the federal courts are located. Here, the pertinent personal jurisdiction law to the underlying action would be Ohio Revised Code Section 2307.382. The Ohio State long-arm statute is pertinent, here, because Mrs. Ramos is a foreign nonparty to this action.  Ohio Revised Code Section 2307.382 states:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to cause an action arising from a person's:

  (1) Transacting any business in this state;
  (2) Contracting to supply services or goods in this state;
  (3) Causing tortious injury by and act or omission in this state;
  (4) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
  (5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when the person might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that the person also regularly does or solicits business, or engages in any other persistent source of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
  (6) Causing tortious injury in this state to any person by any act outside this state committed with the purpose of injuring persons, when the person might reasonably have expected that some person would be injured thereby in this state;
  (7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which the person commits or in the commission of which the person is guilty of complicity;

(8) Having an interest in, using, or possessing real property in this state; and

(9) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(B) For purposes of this section, a person who enters into an agreement, as a principal, with a sales representative for the solicitation of orders in this state is transacting business in this state. As used in this division, "principal" and "sales representative" have the same meanings as in section 1335.11 of the Revised Code.

(C) In addition to a court's exercise of personal jurisdiction under division (A) of this section, a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution.

To determine whether Due Process rights would be violated by the exercise of personal jurisdiction over a nonparty by the United States District Court for the Southern District of Ohio, the Sixth Circuit evaluates three factors: (1) whether the [nonparty] has purposefully availed themselves of the privilege of acting or causing a consequence in the forum state; (2) whether the cause of action arises from the [nonparty's] activities in the forum state; and (3) whether those acts, or consequences caused by those acts, have a substantial enough connection to the forum state to make it reasonable to exercise personal jurisdiction over [the nonparty]. *Southern Machin Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). If just one of these criteria is missing, it is sufficient to prevent the exercise of personal jurisdiction. *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293 (6th Cir. 1989).

### B.     The Scope of Discovery

Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery

outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). While information need not be admissible to be discoverable, it must be proportional and relevant to any claim or defense. *Id.*

The Court is vested with broad discretion to manage discovery. *Dichter-Mad Family Partners, LLP v. U.S.*, 709 F.3d 749, 751 (9th Cir. 2013) (per curiam); *Hunt v. Cnty. of Orange*, 672 F.3d 606, 616 (9th Cir. 2012); *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005); *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). Under Rule 26(c)(1), a party from whom discovery is sought may move for a protective order. Fed. R. Civ. P. 26(c)(1). For good cause shown, courts may issue a protective order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. *See Id.* "[B]road discretion is vested in the trial court to permit or deny discovery." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see also Crawford-El v. Britton*, 523 U.S. 574, 598, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998). A protective order may forbid discovery or specify terms for discovery. Fed. R. Civ. P. 26(c)(1)(A),(B). The 2015 amendments to the discovery rules are meant to curb the culture of scorched earth litigation tactics by emphasizing the importance of ensuring that the discovery process "provide[s] parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery." *Roberts v. Clark County School Dist.*, 312 F.R.D. 594, 603-04 (D. Nev. 2016).

Rule 26's requirement of "good cause" to support a protective order places the burden upon the movant to show the necessity of its issuance; the Court looks to whether the movant has set forth particular and specific demonstrations of fact, as distinguished from stereotyped and conclusory statements. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981).

Most significantly, Rule 26(b)(1) provides, in pertinent part, that discovery must be "proportional to the needs of the case[.]" A party seeking discovery must comply with Rule 26(b)(1)'s proportionality limits on discovery requests and is subject to Rule 26(g)(1)(B)'s requirement to certify that the discovery request is "(i) consistent with these rules . . . ; (ii) not interposed for any improper purpose, such as to harass…; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." Fed. R. Civ. P. 26(g)(1)(B). "Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *United States ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 237 (S.D. Cal. 2015) (citation omitted). While relevancy in the discovery context is broader than in the trial context, district courts need not condone the use of discovery to engage in fishing expeditions. *See, e.g., Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004).

If a party resists discovery on the grounds of proportionality, it bears the burden of making a specific objection and showing that the discovery fails Rule 26(b)'s proportionality calculation by coming forward with specific information to address the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Once the resisting party makes such a showing, then the requesting party is required to make its own showing in regard to relevance or proportionality. *Carr v. State Farm Mut. Auto. Insurance Co.*, 312 F.R.D. 459, 468-69 (N.D.Tex. 2015). "Once the person subpoenaed objects to the subpoena . . . the party seeking discovery must obtain a court order directing compliance." *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 n. 5 (9th Cir.1983).

While the discovery rules are accorded broad and liberal treatment, discovery does have "'ultimate and necessary boundaries.'" *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (*quoting Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Rule 26(b)(2)(C) mandates that the Court limit the frequency or extent of discovery otherwise allowed, if it determines: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C).

Federal Rules of Civil Procedure 26 and 45 govern discovery from non-parties. Discovery may also be obtained from non-parties pursuant to a subpoena issued and served pursuant to Federal Rule of Civil Procedure 45. Fed. R. Civ. P. 45(b)(1).  The Rule 26 relevancy standard also applies to subpoenas to non-parties. *Beinin v. Ctr. for Study of Popular Culture*, No. 06-cv-02298 JW (RS), 2007 U.S. Dist. LEXIS 22518, 2007 WL 832962, at *2 (N.D. Cal. Mar. 16, 2007). Rule 45, in turn, provides that a party may command a non-party to testify at a deposition and "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii).

Both Rules 45 and 26 authorize the Court to modify a subpoena duces tecum when its scope exceeds the boundaries of permissible discovery or otherwise violates the parameters of Rule 45. Where discovery is requested from non-parties, more stringent restrictions should be enforced. The Ninth Circuit has a long-standing policy of affording extra protection to non-parties subject to discovery requests. *See High Tech Med. Instr., Inc. v. New Image Ind., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) (awarding sanctions against party who failed to avoid burden to non-party); *see, e.g.*, *Century Sur. Co. v. Master Design Drywall, Inc.*, No. 09cv280-LAB-AJB, 2010

U.S. Dist. LEXIS 53831, 2010 WL 2231890, at \*1 (S.D. Cal. June 2, 2010) ("Underlying the protections of Rule 45 is the recognition that the word 'non-party' serves as a constant reminder of the reasons for the limitations that characterize 'third-party' discovery.") (citations and quotations omitted); *Kim v. NuVasive, Inc., No*. 11cv1370-DMS-NLS, 2011 U.S. Dist. LEXIS 96878, 2011 WL 3844106, \*2 (S.D. Cal. Aug. 29, 2011) ("Non-parties deserve extra protection from the courts"). Thus, the subpoena should be tailored to request only information reasonably necessary to address specific issues in the case. *See Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 813 (9th Cir. 2003).

Rule 45 provides additional protections to non-parties; specifically, the party issuing a subpoena to a non-party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). In that regard, a subpoena must give a prospective deponent reasonable notice, and the court must quash or modify a subpoena when it "fails to allow a reasonable time to comply." Fed. R. Civ. P. 45(d)(3); *see Nalco Co. v. Turner Designs, Inc.*, No. 13-cv-02727 NC, 2014 U.S. Dist. LEXIS 45669, 2014 WL 1311571, at \*1 (N.D. Cal. Mar. 31, 2014) (denying motion to compel because subpoenaing party failed to take reasonable steps to avoid imposing undue burden). In turn, the Court "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii).

The party who moves to quash a subpoena has the "burden of persuasion" under Rule 45(d)(3) to demonstrate that compliance would impose undue burden or expense. To determine whether the subpoena presents an undue burden, the Ninth Circuit considers the following factors: (1) the burden imposed on the party subject to the subpoena by the discovery request; (2) the relevance of the information sought to the claims or defenses at issue; (3) the breadth of the

discovery request; and (4) the litigant's need for the information. *Malibu Media, LLC v. Doe*, No. 16cv444-GPC-BGS, 2016 U.S. Dist. LEXIS 168657, 2016 WL 7098807, at *1 (S.D. Cal. Dec. 6, 2016) (quoting *Liberty Media Holdings, LLC v. Does*, No. 11cv575-MMA-NLS, 2012 U.S. Dist. LEXIS 24232, 2012 WL 628309, at *2 (S.D. Cal. Feb. 24, 2012). Whether a burdensome subpoena is reasonable "must be determined according to the facts of the case," such as the party's need for the documents and the nature and importance of the litigation." *Linder v. Dep't of Def.*, 133 F.3d 17, 24, 328 U.S. App. D.C. 154 (D.C.C. 1998). (citation and internal quotation marks omitted). The "undue burden" test also requires the Court to be "generally sensitive to the costs imposed on third-parties." *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010) (citation and internal quotation marks omitted).

## V.    ARGUMENT

### A.    The Southern District of Ohio Lacks Personal Jurisdiction Over Mrs. Ramos.

As discussed above, the Southern District of Ohio may not exercise personal jurisdiction over a nonparty, such as Mrs. Ramos, unless: (1) the nonparty falls within the scope of the long-arm statute of Ohio, and (2) the court's exercise of personal jurisdiction would not violate the Due Process Clause of the United States Constitution.

Here, an exercise of personal jurisdiction over Mrs. Ramos would fail both the Ohio long-arm statute and the Sixth Circuit's three-factor test to determine whether her Due Process rights would be violated as a non-party. The Ohio long-arm statute requires that the cause of action "arise" from a person's contacts with the State of Ohio. Plaintiffs do not claim that any of their alleged causes of action arise from Mrs. Ramos' contacts; indeed, she is not a defendant. Mrs. Ramos has sworn in her declaration that she has at all relevant times resided in Washington State, has been licensed in the States of Washington and California, and that she has no contact with

Ohio or with Plaintiff Lisinski (the sole Ohio Plaintiff) relevant to this case.  Thus, the Ohio long-arm statute does not provide a basis for the exercise of personal jurisdiction over her in this matter.

In addition, Mrs. Ramos' contacts with the State of Ohio fail the Sixth Circuit test, as she has not acted or caused any consequence in Ohio, the cause of action does not arise from her activities in Ohio, and her contact with Ohio is not a substantial enough connection to Ohio to make it reasonable for the Southern District of Ohio to exercise personal jurisdiction over her for purposes of the issuance of the subpoena.

In conclusion, neither of the two legal bases used to authorize federal courts in Ohio to exercise jurisdiction over subpoenaed nonparties in Washington are sufficiently satisfied to justify the subpoena ordered on Mrs. Ramos. As a result, this Court should quash the Plaintiffs' subpoena for lack of personal jurisdiction; or, alternatively, issue a protective order limiting deposition and document discovery to the issue of personal jurisdiction, *i.e.*, Mrs. Ramos' contacts with Ohio and Plaintiff Lisinski, the sole Ohio Plaintiff, and excluding from discovery the catchphrase "arreglar sin salir".

**B. The Subpoena Should Be Quashed as it is Overly Broad, Lacks Proportionality, is Unduly Burdensome, Seeks Information Not Relevant to the Claims in the Plaintiffs' Complaint, and Document Discovery is Not Permitted by Court Order.**

Rule 26(f) dictates that a party generally may not seek discovery "before the parties have conferred as required by Rule 26(f)," except in limited circumstances, including when authorized by court order for good cause. Red. R. Civ. P. 26(d). Plaintiffs' motion for leave to serve third party subpoenas prior to a Rule 26(f) Conference was granted by the United States District Court for the Southern District of Ohio, which relied on caselaw that **exclusively** supports the issuance of subpoenas to third-party platforms and internet service providers. The court found that there was "good cause" for expedited discovery as: Plaintiffs asserted an unfair competition claim

against Defendants for misappropriation of their trademarks; "only the internet platforms on which the alleged conduct occurred can identify Defendants"; and that the scope of the requested discovery is sufficiently narrow as Plaintiffs' request from the internet platforms only the identifying information of users who reported their content, left false reviews, and created imposter accounts, and they wish to engage in depositions of individuals suspected of being involved in the campaign, but only to determine the "extent of those individuals' knowledge regarding the defamatory campaign, and their knowledge of the defamers' identities."

Given that the Plaintiffs claim that their goal from expedited discovery is to identify the John Doe defendants, those identities are best obtained from social media platforms and third-party internet service providers. The court has acknowledged that "only the internet platforms on which the alleged conduct occurred can identify Defendants". Therefore, the information that Plaintiffs seek is best found through the discovery process with the social media platforms and third-party internet service providers, not through non-party individuals like Mrs. Ramos.

In her declaration, Mrs. Ramos indicates that she has not engaged in any of the conduct alleged in the Complaint (online harassment, reporting of social media posts, tortious interference with business relations, intellectual property infringement, etc.) against any of the Plaintiffs; she has no knowledge of the person, persons, or entities purportedly responsible for the conduct alleged in the Complaint; and she has no connection whatsoever to the conduct alleged in the Complaint nor to the legal issues specified therein. Therefore, the only means by which the Plaintiffs may identify the John Doe defendants is through the discovery process with the social media platforms and third-party internet service providers.

Moreover, the United States District Court for the Southern District of Ohio granted Plaintiffs leave to engage in limited scope discovery related to "**depositions** of individuals

suspected of being involved in the campaign but only to determine the 'extent of those individuals' knowledge regarding the defamatory campaign, and their knowledge of the defamers' identities." (emphasis added). In the order, the court expressly **did not** grant document discovery by Plaintiffs for those individuals. If the court had intended to grant document discovery *and* depositions, it would have indicated as such in the order. However, the court did not mince words, and granted limited scope discovery related to depositions only. For this reason, Plaintiffs' subpoena to Mrs. Ramos requesting her to appear for deposition *and* to produce documents regarding her text messages, e-mails, and social media for the Plaintiffs' names, any variations thereof, their law firm names, and the phrase "arreglar sin salir" from June 2020 to present is therefore overbroad, lacks proportionality, is unduly burdensome, seeks information that is not relevant to the underlying complaint, and is contrary to the limited scope discovery granted by the United States District Court for the Southern District of Ohio.

While the subpoena should be tailored to request only information reasonably necessary to address specific issues in the case, Plaintiffs seek impermissible document discovery that covers an arbitrary 28-month period without providing any specifying criteria as to what documents they are looking for and how those documents relate to the identities of the alleged John Doe Defendants. *See Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 813 (9th Cir. 2003).

Furthermore, Plaintiffs' overly broad document discovery subpoena to Mrs. Ramos does not serve a legitimate discovery purpose as the identities of the defendants may be ascertained by the discovery process with the social media platforms and third-party internet service providers. Here, Plaintiffs are attempting a "fishing expedition" through the discovery process that is impermissible under Rule 26(b). *United States ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 237 (S.D. Cal. 2015) ("Rule 26(b) has never been a license to engage in an unwieldy,

burdensome, and speculative fishing expedition.") Given the cease-and-desist letter that Mrs. Ramos received from Plaintiff Lozano in March of 2021 and now the subpoena at issue in the instant motion, it is evident that Plaintiffs are using the discovery process as retribution against Mrs. Ramos, to harass her, as well as to cause her undue burden and expense.

As a non-party to this litigation, Plaintiffs' counsel "must take reasonable steps to avoid imposing undue burden or expense" on Mrs. Ramos, which has not been done here given the wide breadth of the document discovery requested in the subpoena. *See* Fed. R. Civ. P. 45(d)(1). Consistent with Ninth Circuit precedent, Mrs. Ramos, as a non-party, deserves extra protection by this Court by quashing the subpoena, or, alternatively, issuing a protective order.

## VI.    CONCLUSION

WHEREFORE, Stefania J. Ramos Birch, Esq., *pro se*, respectfully requests that this Court enter an order quashing the third party subpoena issued to her in *Lozano, et al., v. Doe, et al.*, 2:22-cv-03089-ALM-KAJ, based on lack of personal jurisdiction; or, in the alternative, requests that this Court enter a protective order limiting her deposition testimony and discovery in this matter to the issue of her contacts with Ohio/personal jurisdiction (*i.e.*, topics and documents related to the sole Ohio Plaintiff, Angelyne Lisinski, and expressly excluding the phrase "arreglar sin salir"); or, in the alternative, requests a protective order to limit discovery to a deposition only to determine the extent of her knowledge regarding the defamatory campaign alleged in the Complaint and to her knowledge of the defamers' identities; or, if so ordered to comply with the subpoena, she requests a 90-day extension due to her advanced pregnancy, imminent due date, and pre-planned maternity leave.

Respectfully submitted on this 30th day of September 2022,


s// Stefania J. Ramos Birch Esq.
Stefania J. Ramos Birch Esq.
*pro se*
WDW I.D. 6545469
Washington Bar No. 52468
California Bar No. 294827
Ramos Immigration PLLC
P.O. Box 2102
Bothell, WA 98041
(425)218-7458
ramosimmigration@gmail.com