# EXHIBIT F



RAEESABBAS MOHAMED

Founding Partner
480-331-9397
raees@rmwarnerlaw.com
8283 North Hayden Road #229
Scottsdale, AZ 85258

March 11, 2021

**_SENT VIA FIRST CLASS U.S. MAIL AND EMAIL_**
Stefania Joanne Ramos Birch
P.O. Box 2102
Bothell, WA 98041
Email: ramosimmigration@gmail.com

**_Re: Immediate Action Required – Removal of Defamatory Posts on Facebook_**

Dear Ms. Ramos Birch,

My firm has been retained to represent Alexandra Lozano, Esq. ("Client") with regard to above-referenced false and defamatory statements that you have posted on Facebook in a "private" group named "Nerdy Immigration Lawyers." The defamatory statements are outlined below ("Defamatory Statements"). The Defamatory Statements are not only false, but also portray my Client in a false light, and are extremely damaging to my Client, a professional lawyer in Washington. The postings at issue are attached as **Exhibit A** for your reference.

The Defamatory Statements are false, defamatory, and have caused significant harm to my Client. You must delete the Defamatory Statements **immediately, and confirm the same within 5 calendar days of this demand**; otherwise, our firm will have no choice but to sue you, and seek damages for the harm caused to my Client's professional reputation.

### Background Facts

My Client is a professional attorney in Washington, and is the founder of AMIGA Lawyers, a successful private group of female attorneys throughout the United States, who support and uplift one another. She is known for her effective immigration practices, specifically due to her work with I-360 Violence Against Women Act ("VAWA") and T-Visa cases. My Client has filed over 1000 VAWA cases, and has only lost one due to no fault of her own. My Client works around the clock to serve disadvantaged communities, and uses the reputation she has built for herself to help hundreds of clients gain lawful status in the United States. Because of her knowledge, experience, and ability to help undocumented residents have a brighter future, my Client utilizes the power of social media to educate the public and other attorneys on the benefits of taking advantage of all opportunities available under the law, including screening clients for different immigration relief options.

Demand letter to Stefania Joanne Ramos Birch
3/11/2021
Page 2 of 9

On July 20, 2016, a private Facebook group called "Nerdy Immigration Lawyers" was formed as "a general immigration law discussion group for and by immigration lawyers" (the "Group"). The Group currently has over 5,500 members of the legal community. My Client, who recently left the Group on February 16, 2021, has been the target of defamatory attacks, such as your Defamatory Statements, in the Group by its members, that has affected her reputation in the immigration law community. You have been identified as one of the Group's members and as one of the active participants in the campaign to smear my Client's reputation and ultimately hurt her business.  We understand that lawyers may have differing opinions on points of law, and even immigration lawyers serving the same communities may have opposite viewpoints; however, this does not justify publishing *false and defamatory* purported statements of fact about my Client.

### A.  Violence Against Women Act and other Immigration Relief

The best way to help you understand why your statements are defamatory is by giving you a summary of the law that is the focal point of my Client's educational videos. A major, underutilized form of immigration relief is found under VAWA. VAWA includes provisions to allow noncitizen-victims of physical and mental abuse to obtain immigration relief independent of their abusive spouse or parent.[1] For an individual to be eligible to self-petition for relief under VAWA, she or he must be: a spouse or former spouse (under specific circumstances) of an abusive U.S. citizen or lawful permanent resident; a child of abusive citizens or lawful permanent residents who file before turning 25; a noncitizen parent of an abused noncitizen child, even if the noncitizen parent is not herself abused; and a non-citizen spouse whose children are abused by the child's other U.S.-citizen or LPR parent.[2] Although the legal standard for abuse is "battery or extreme cruelty," there is no known threshold for how severe the abuse must be to constitute battery or extreme cruelty. It is up to the government to determine whether an individual has satisfied the eligibility requirements and met that legal standard. Aside from the fact that there is no limit on how many self-petitions may be filed annually, everyone has a right to file and be heard if they believe that they meet the criteria listed in VAWA. It would be outrageous to think that one person's abuse is more important than another's abuse, and therefore, some people should accept their abuse because others may be having it "worse."

Another form of immigration relief is referred to as a T-Visa, which was created under the Battered Immigrant Women Protection Act of 2000. The T-Visa provides relief to victims of severe forms of human trafficking, which is defined as (i) "sex trafficking in which a commercial sex act is induced," or in which the person induced is under 18 years of age; or (ii) "recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force…for the purpose of subjection to involuntary servitude."[3] Once again, as long as this criterion is met, an individual is eligible for relief under the T-Visa. Aside from the definitional language of "severe forms of trafficking in persons," there is no known legal threshold of how severe the abuse and/or trafficking must be to become eligible. These two forms of relief, which

---

[1] INA § 245(a); 8 U.S.C. § 1255(a).
[2] INA § 204(a)(1)(A), 8 U.S.C. § 1154(a)(1)(A).
[3] 22 U.S.C. § 7102(11); Trafficking Victims Protection Act of 2000 (TVPA), Pub. L. No. 106-386, Div. A, 114 Stat. 1470.

Demand letter to Stefania Joanne Ramos Birch
3/11/2021
Page 3 of 9

my Client is extremely knowledgeable and experienced in, have been the subject of my Client's educational videos, and as such, the crux of your Defamatory Statements.

### B. Washington's Rules of Professional Conduct and Screening Clients

In the targeted attacks by you and other members of the Group, my Client was accused of deceiving the public and using unethical tactics by questioning clients to determine if they qualify for the forms of immigration relief described above. As a lawyer yourself, it is my hope that you are more than aware that attorneys are governed by the Rules of Professional Conduct. Under Washington's Rules of Professional Conduct ("RPC"), a lawyer has certain mandatory and permissive duties that allow my Client, and other attorneys, to consult with their clients and engage in a form of questioning and soliciting of information so they may best represent their clients' interests. These relevant rules include, but are not limited to, the following:

>*RPC 1.3*—A lawyer shall act with reasonable diligence and promptness in representing a client. In Comment 1, the attorney is guided by the following: Although a lawyer is not bound to press for every advantage that might be realized for a client, it is not unethical to do so. A lawyer has professional discretion to determine the means by which a matter should be pursued.

>*RPC 1.4(a)(2)*—A lawyer shall reasonably consult with the client about the means by which the client's objectives are to be accomplished.

>*RPC 2.1*—A lawyer shall exercise independent professional judgment and render candid advice. In rendering advice, a lawyer may refer not only to law, but to other considerations such as moral, economic, social and political factors, that may be relevant to the client's situation.

Although a lawyer may not directly solicit professional employment under RPC 7.3(a), that is not what my Client was doing. My Client is not only ethically sound in asking her clients questions to determine the best way to represent them, but is also a successful and trusted attorney because of the way she vigorously represents her clients' interests. That being said, the RPC applies to lawyers inside and outside the scope of their role as an attorney. Under *RPC 8.4*, it is professional misconduct for a lawyer to: (i) commit a criminal act that reflects adversely on the lawyer's fitness as a lawyer (*RPC 8.4(b)*), and (ii) engage in conduct demonstrating unfitness to practice law (*RPC 8.4(n)*). Therefore, it is unethical for an attorney, such as yourself, to behave in such a manner that could possibly constitute harassment. However, my Client has no intention of pursuing a harassment claim or bar complaint in the hope that these Defamatory Statements were an error in judgment and will be expeditiously removed.

### <u>Your Defamatory Statements</u>

Please reference your statements attached in **Exhibit A**. With regard to these statements:

1. <u>False</u>: "She quoted someone $12K for a VAWA…"

Demand letter to Stefania Joanne Ramos Birch
3/11/2021
Page 4 of 9

**Truth**: This statement creates a false impression that $12,000 for a VAWA application is unreasonable, and that my Client is violating her ethical obligations under Washington State's Rules of Professional Conduct. RPC 1.5 states that a lawyer should not charge *unreasonable* fees, and then lists a myriad of factors that are considered when determining if fees are unreasonable. My Client's time, labor, and knowledge, the time limitations set by the circumstances, the difficulty of the process, and the skill required to perform this particular service all contribute to why my Client charges the fees she does, and why it is reasonable under the circumstances. My Client is a leading expert in the field and her services are highly sought after. She is ethically sound in charging $12,000 for a VAWA case, and it is a falsity to suggest otherwise.

2. <u>False</u>: "…when the person wasn't even eligible."

**Truth**: This statement is false because the context of the entire statement tells the reader that my Client quoted a potential client for a service that she knew she could not perform. My Client has never offered her services and expected a client pay for those services without using diligence to determine if the client could actually be helped. My Client is aware that other lawyers in the immigration field do not believe in or agree with her successful strategies to help her clients gain lawful permanent residence under VAWA. However, it does not make my Client's methods any less accurate or ethical than the strategies of other attorneys in the field. Finally, you represent to the public to have specialized knowledge of the circumstances of a particular client and the advice that my Client offered said client – if you do not have said knowledge, then this is further evidence of the malice with which you are attacking my Client. But even if you do have such specialized knowledge of a particular client encounter and what was stated to the client (which you cannot possible have, as you would only have one-side of the consultation), you statement presumes that there is no professional discretion as to eligibility under VAWA.

3. <u>False</u>: "I've tried to encourage clients to report her."

**Truth**: This statement creates a false impression that my Client has acted in a way or violated a rule to merit being reported. RPC 8.3 states that a lawyer who knows that another lawyer committed a violation of the RPC and that violation raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer should report that lawyer's professional misconduct. First, my Client has not violated any rules for which your comments suggest. Second, other immigration attorneys may not agree with my Client's business practices, but my Client has not raised a "substantial question" as to her fitness as an attorney. She has been an exceptional resource for other attorneys in the field and vigorously advocates for her clients' interests, while working within the limits of the law and the RPC. Finally, your "encouragement" itself, i.e., urging clients to fabricate false complaints her, is unethical.

Demand letter to Stefania Joanne Ramos Birch
3/11/2021
Page 5 of 9

### **Defamation, Defamation Per Se, and Defamation by Implication**

The damaging statements contained within the Defamatory Statements on Facebook in the Group are substantial.  Specifically, the post contains provably false statements such as the allegation that my Client has committed a violation in her profession that merits being reported. By accusing my Client of conduct that targets her profession, the Defamatory Statements are defamatory *per se*, and the statements harm her reputation in the minds of reasonably minded people and are actionable at law as set forth below.

To be clear, my Client has never engaged in any sort of the misconduct you described.  As a result of these Defamatory Statements, her reputation has suffered, and she lives in fear of her reputation being continually harmed by the publicly harmful statements, and continual emotional distress.  If the Defamatory Statements are allowed to persist, any person, including potential clients and others business contacts, may avoid her legal and educational services due to the natural desire to avoid a public association with the misconduct stated, and will cause significant harm to my Client's professional legal practice and business as an immigration law educator.  All of these accusations and Defamatory Statements are highly defamatory and actionable by law, which I will explain below.

### **Defamation Elements**

The four main elements for defamation are: (i) a false and defamatory statement concerning the plaintiff; (ii) an unprivileged publication to a third party; (iii) fault amounting at least to negligence on the part of the publisher; and (iv) "actionability" of the statement either due to special harm caused by the publication or irrespective of special harm given the nature of the allegation.  See *Restatement (Second) of Torts § 558*. *Seley–Radtke v. Hosmane*, 2016 WL 6871523 *1. Specifically, under Washington law, in order to prove a claim for defamation, the plaintiff must establish: (i) falsity of the statement, (ii) an unprivileged communication to a third party, (iii) fault on the part of the defendant, and (iv) damages. *Mark v. Seattle Times*, 635 P.2d 1081 (Wash. 1981).

Written communications which are claimed to be libelous fall into one of the three classes: (a) those which on their face and without the aid of any extrinsic matter come within the definition above set forth, (b) those which on their face do not fall within the definition but which by reason of special extraneous circumstances actually do, and (c) those which even though aided by the surrounding circumstances cannot reasonably be held to fall within it.

As noted above, the first type, Class (a), is applicable here and is called **'defamation per se'** because it needs no allegation or existence of extraneous surrounding circumstances to make it such. *Hearst Corp. v. Hughes*, 297 Md. 112, 118, 466 A.2d 486, 489 (1983); *See also Lawnwood Medical Center, Inc. v. Sadow*, 43 So.3d 710, 722 (2010) ($5 million punitive damages award upheld where "comments constituted slander per se, comments were intended to destroy surgeon's career and professional reputation in community, comments would likely have significant professional consequences, and award was legally equal and proportionate to actual harm inflicted"). A statement is defamatory per se when the defamatory character of the statement is

Demand letter to Stefania Joanne Ramos Birch
3/11/2021
Page 6 of 9

apparent on its face – and in this case, about one's profession; that is, when the words used are of such a nature that the court can presume as a matter of law that the communication will tend to degrade or disgrace the party defamed.

An allegation that impugns a person's profession is defamation per se, and damages are presumed. *Id.* My Client is an immigration attorney and makes a living providing advice to clients who need immigration help. You even went so far as to imply my Client is charging unreasonable fees for meritless cases, and deserves to be reported. As such, because your comments about my Client are defamatory on their face, and **are presumed to damage my Client**, a reputable lawyer.

The second type, Class (b), is a communication that is categorized as "defamation by implication, where even literally true statements can be defamatory where they create a false impression. *See Stevens v. Iowa Newspapers, Inc.,* 728 N.W.2d 823, 827 (Iowa 2007) ("Defamation by implication arises, not from what is stated, but from what is implied when a defendant '(1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts, [such that] he may be held responsible for the defamatory implication ....' " (quoting W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 116, at 117 (5th ed. Supp.1988))).

Your post contains statements that would fit under the penumbra of Class (b) statements, specifically for example, the statements stating my Client urges clients to file VAWA cases that are not "eligible" cases, and charges $12,000 for said cases. As such, the statement, even if literally true, implies a defamatory statement that my Client is over-charging her clients for her services and has no sound basis for charging that amount – all for which you may also be held liable for damages, for these reasons.

As stated above, in this case damages are *presumed* because the Defamatory Statements directly pertain to my Client's honesty, integrity, and profession. As a direct and proximate result of the Defamatory Statements, my Client has sustained, and continues to sustain, immediate and irreparable harm and injury including, but not limited to, damage to reputation, loss of expected benefit, loss of goodwill, loss of business relations with existing and future business prospects, loss of family life), and loss of competitive advantage, opportunity, and/or expectancy. Furthermore, the Defamatory Statements are and would be, highly offensive to a reasonable person and have been published to a person or persons with the intent of causing harm to the reputation and economic interests of my Client, among many other damages described herein.  Indeed, the post is targeted towards those in the area of my Client, as evidenced by the fact that the Group is a Facebook group of other immigration attorneys across the United States, and is aimed at causing the most damage to her by being posted under a video connected to her name and business.

In making and publishing the Defamatory Statements, you obviously acted maliciously, wilfully, wantonly, and unlawfully. We've identified examples of your intentions behind your Defamatory Statements, which were designed to bring harm to my Client.  You had knowledge of, or acted in, negligent and/or reckless disregard as to the falsity of the content published and the false and negative light in which my Client would be placed.  Furthermore, your actions, omissions, and conduct outlined above were aggravated, outrageous, and guided by evil motives

Demand letter to Stefania Joanne Ramos Birch
3/11/2021
Page 7 of 9

wherein they intended to harm my Client and/or consciously pursued a course of conduct knowing that created a substantial risk of significant harm to her. As such, I believe my Client would obtain punitive damages in any action filed against you.

## Burden of Proof and Other Issues

My Client is confident that you would be unable to carry your burden of proving the truth of any of the Defamatory Statements since she has the applicable law on her side and the video in which the Defamatory Statements were directed. The law is very specific, and states that unless the publication in the instant case was privileged or qualifiedly privileged, the proof of publication of the article carried with it the presumption of its falsity and of malice toward the plaintiff and the burden was upon the defendant to prove both the truth of the publication and a lack of malice toward plaintiff. Furthermore, it makes no difference if the poster and commenters thought that what they said was true, as every person is presumed to intend the natural and probable consequences of his own act. Belief in the truth of their charges does, however, go to the heart of punitive damages, and the jury might consider the spirit with which something was spoken in determining whether the speaker was vicious, unreasonably thoughtless. As such, my Client would prevail in an action against the poster and commenters as they have no qualified privilege for making the Defamatory Statements of fact that damage my Client.

## Summary

All of these Defamatory Statements either accuse my Client of not being moral, or harm her in her profession, trade, or business. This would allow my Client to recover damages without actual proof of loss. We would note, however, that my Client would be able to also prove the existence of actual damages, including but not limited to emotional distress, arising from your campaign of defamation, which is impacting her life dramatically.

Based on the above, we respectfully request that you delete the Defamatory Statements **immediately, and within no later than 5 calendar days from the date of this letter,** and refrain from publishing such statements.

If you do not plan to assist us voluntarily, please let us know immediately so that we can start the litigation process in order to take action against you. In addition, we would also request that you keep any and all records, reports, analytics, or similar that we would request (in the event of litigation) that would be used to identify the person(s) who provided the information as well as the identity of any other posters.

Finally, we are aware that you may desire to publish this demand on social media in furtherance of your defamation campaign against my Client, and in order to cause the maximum reputational carnage as possible. In the unfortunate even that you do so, we will use your publication as further evidence of your malicious intent in any future litigation against you.

This letter is not meant to be a release, waiver, or admission by my Client. Thank you for your assistance.

Demand letter to Stefania Joanne Ramos Birch
3/11/2021
Page 8 of 9

Sincerely,

Raees Mohamed

Enclosures: Defamatory Post

Demand letter to Stefania Joanne Ramos Birch
3/11/2021
Page 9 of 9

**EXHIBIT A**
**YOUR DEFAMATORY STATEMENTS**

