**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISCTRICT OF WASHINGTON– SEATTLE DIVISION**

LOZANO ET AL,

      Plaintiffs/Respondents

v.

DOES I-X, ET AL,

      Defendants,

v.

BIRCH,

      Petitioner.

Civil Misc. Action No. 2:22-mc-00078

Judge Robert S. Lasnik

**MEMORANDUM IN OPPOSITION TO PETITIONER'S**
**MOTION TO QUASH THIRD-PARTY SUBPOENA AND FOR PROTECTIVE ORDER**

**Introduction**

The issue before the Court is to determine whether Petitioner Stefania Ramos Birch

("Birch") has demonstrated grounds exist under Fed. R. Civ. P. 45(d) that allow her to avoid

responding to the third-party subpoena Respondents Alexandra Lozano, Angelyne Lisinski, and

Giulia Fantacci (collectively, "Respondents") served on Birch on September 16, 2022, in

Lynnwood, Washington (the "Subpoena").  In Birch's Motion to Quash Third-Party Subpoena

and for Protective Order ("Motion" or "Mot", Doc. 1), Birch offers argument, but virtually no

evidence to that effect.[1]  This is because the Subpoena is properly limited in scope, and is in

---

[1]    The Motion well exceeds the twelve-page limit required under LCR 7(e), and Ms. Birch
did not seek leave to file an over-length motion.  Therefore, pursuant to LCR 7(g), Respondents
respectfully request that the Court strike and/or disregard all argument starting on Page 13 of the
Motion.  Due to the page restrictions, Ms. Birch's argument regarding personal jurisdiction, and

compliance with all the requirements of Fed. R. Civ. P. 45.

Instead, Birch argues that because the Southern District of Ohio (the issuing court) lacks personal jurisdiction over Birch, she is not required to comply with the Subpoena. (Motion at 13-14). Birch misses the point: Whether the Southern District of Ohio has personal jurisdiction over her has literally nothing to do with her duty to comply with the subpoena pursuant to Fed. R. Civ. P. 45. As this Court is well aware, the extensive amendments to Fed. R. Civ. P. 45 enacted in 1991 and 2013, expressly permit nationwide service of third-party subpoenas. The case law that Birch relies upon is outdated and inapposite. At its core, Birch's argument is incorrect because the Subpoena's "place of compliance" (and the forum for enforcement) as defined in Fed. R. Civ. P. 45, is in this very district, the Western District of Washington, which undoubtedly has personal jurisdiction over Birch. Thus, Birch's argument is without merit, and the Respondents respectfully request the Court deny Birch's Motion in its entirety and order her compliance with the perfectly valid subpoena.

## **Factual Background**

### A.    **Respondents Are The Target Of A Two-Year Defamatory Harassment Campaign By Anonymous Online Detractors And Competitors.**

As alleged in their Complaint (Mot. Exh. E, Doc. 1-5), Respondents are immigration attorneys who operate their own successful law firms. They each have specialized knowledge of Violence Against Women Act ("VAWA") visas and Victims of Trafficking in Person or "T" visas, which are misunderstood and underutilized. (Compl. ¶ 10). In or around August 2020, Respondents became the target of a defamatory, discriminatory harassment campaign by anonymous individuals online (the "Doe Defendants"). (*Id.* ¶ 27). At the start, the Doe

---

her request for a protective order are not properly before the Court. This alone is basis for denying Ms. Birch the relief she requests. *See* LCR 7(e)(6).

Defendants targeted Respondents' accounts on the social media platform TikTok, Inc. ("TikTok"). (*Id.*) The campaign was aimed at disrupting Respondents' ability to educate potential clients about VAWA and T visas, and prohibit Respondents from marketing their services. The campaign also defamed Respondents by painting their ethical and successful legal practices as illegal and scams. The campaign escalated to the point where each of Respondents were banned by TikTok at multiple times over the last year due to these defamatory and harassing efforts by Defendants. (*Id.* ¶¶ 31-32, 34, 41, 46-47, 52).

Doe Defendants then spread their campaign to other social media platforms. (*Id.* ¶ 56). For example, Doe Defendants have reported marketing content, paid advertising, and organic posts on Facebook, and have spammed review websites such as Facebook and Google, all in an unlawful campaign purposely designed to disrupt Respondents' ability to help the undocumented immigrant population. (*Id.*). Doe Defendants then escalated their attacks on Respondents by creating imposter accounts on social media platforms to further dissuade members of the undocumented community from trusting and utilizing Respondents' services. (*Id.* ¶ 57). These imposter accounts, using Respondents' trademarks, have contacted Respondents' current and prospective clients, requesting money, and making defamatory comments. (*Id.* ¶¶ 58-68).

B.    **Respondents Have Been Unable to Identify Their Anonymous Harassers, And Were Therefore Granted Leave To Serve Third Party Subpoenas.**

Because the attacks have been conducted online, through third party platforms, and anonymously, Respondents have been unable to ascertain the identities of their harassers. The only way Respondents can obtain the names of the individuals who are methodically and tortuously damaging Respondents each day is through third party subpoenas. Therefore, Respondents sought leave from the Southern District of Ohio (where the Complaint is pending) for limited discovery to determine the identity of the individuals promulgating the defamatory

3

statements concerning Respondents.  The Southern District of Ohio granted Respondents leave to issue third party subpoenas, including subpoenas to individuals known to Respondents who are believed to be connected to the defamation and infringement campaign, and who are believed to know the identities of the individuals defaming Respondents.  (Opinion and Order, Aug. 12, 2022, Mot. Exh. D, Doc. 1-4).  This includes Petitioner Birch.

> **C.**     **Petitioner Birch Has Heard Defamatory Statements Regarding Respondents.**

Birch's Motion makes clear that Birch, at the very least, has heard defamatory statements concerning Respondents and thus had information directly relevant to the subpoena and Respondents' lawsuit.  To begin, Birch claims that she has heard Lozano charges $12,000 for her legal services, and encourages her clients to lie to qualify for immigration status.  (Mot. at 3). These allegations closely align with defamatory remarks that have been made about Plaintiff Lozano.  Birch also implies that Lozano tells "most" prospective clients they are eligible for VAWA or T-Visas, which is simply not true.  (*Id.*).  Birch notes that she is aware of "immigration practitioners" who have publicly criticized (and defamed) Lozano, thereby outright admitting that she knows of individuals who have engaged in the very conduct alleged in Respondents' Complaint.  (*Id*. at 3-4).  Evidently, someone told Birch this false information, and that someone may very well be the Doe Defendant(s) Respondents were granted discovery to identify.  At bottom, Birch plainly has heard false and defamatory information regarding the Respondents, as she repeated some of those false statements in her Motion and attached declaration.  Accordingly, Birch has information that is relevant to Respondents' lawsuit.

> **D.**     **Ms. Birch Did Not Meet and Confer With Respondents' Counsel Regarding Her Objections to the Subpoena Before Filing this Motion.**

Birch was served with the Subpoena on September 16, 2022.  (Decl. of K. Fraser, Oct. 17, 2022 at ¶ 5, attached as Exh. 1, hereinafter "Fraser Decl.").  Birch called counsel for

4

Respondents that same day, and counsel explained to Birch the document requests and the types of communications Respondents were seeking, and also readily agreed to accommodate Birch's pregnancy.  (*Id.* ¶ 5).  Birch and counsel for Respondents communicated via email on September 21, 22, 23, and 27, 2022, regarding scheduling Birch's deposition at a time that would be best for Birch, and also setting a deadline for document production.  (*Id.* ¶¶ 6-8).  At no time did Birch voice any objections to the Subpoena's scope, or seek to confer regarding the same; instead, Birch gave every appearance of being cooperative.  (*Id.* ¶ 9).  Then, Birch filed the instant Motion without any notice to counsel.  (*Id.* ¶ 10).  This Motion is nearly identical to a motion to quash filed in the Southern District of Texas by a different third party witness against Respondents.  (*Id.*).  Respondents have since discovered that a group of immigration lawyers are coordinating to stonewall Respondents' discovery of the identities of their harassers.  (*Id.* ¶ 11).  The conduct that Birch and others are engaging in is remarkably similar to the conduct that Respondents' complain of in their Complaint and appears to be more evidence of collusion against Respondents in their efforts to stop the daily harassment they face.

## Legal Standard

Fed. R. Civ. P. 45(d)(3) requires a subpoena be quashed or modified when the subpoena: (i) fails to allow reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or protected matter, if no exception or waiver applies; or, (iv) subjects a person to undue burden.  "A movant must state specific reasons why a subpoena should be quashed; simply making a general assertion is inadequate."  Geller v. von Hagens, 278 F.R.D. 572, 575 (S.D. Cal. 2011)

To evaluate undue burden, courts examine the relevance of the information requested, the need for the requested documents, the breadth of the request, the time period covered by the

request, the particularity with which the party describes the relevant documents, and the burden imposed. *Russell v. Zoellin*, No. C18-0827-JCC, 2019 WL 1989654, at *1 (W.D. Wash. May 6, 2019). The moving party carries the burden of proof. *See id.*

**<u>Argument</u>**

The Court should deny Birch's Motion because Birch's personal jurisdiction argument is fundamentally incorrect. Second, Birch provides argument, but no evidence that compliance with the Subpoena presents an undue burden or that there is some other basis under Fed. R. Civ. P. 26 to enter a protective order. Further, Birch failed to meet and confer with Respondents' counsel prior to filing her motion for protective order, in violation of LCR 26(c)(1), warranting denial of her request. Therefore, the Court should deny the Motion in its entirety and Birch should be made to produce documents and sit for the requested deposition at the conclusion of her maternity leave.

**A.    Fed. R. Civ. P. 45 Addresses Petitioners' Personal Jurisdiction Concerns, Rendering Petitioner's Argument Moot.**

The primary argument Birch forwards in support of her Motion is that complying with the Subpoena presents an undue burden because she is not subject to personal jurisdiction in the Southern District of Ohio. This argument misses the mark, because Respondents are not seeking compliance with a Subpoena in the Southern District of Ohio. They are seeking compliance in the Western District of Washington, pursuant to Fed. R. Civ. P. 45. The Western District of Washington does have personal jurisdiction over Birch. As such, there is no undue burden in complying with the Subpoena, and the motion should be denied.

**1.    The Court Responsible For Enforcing Subpoenas Issued By A Federal Court Has The Jurisdiction To Compel Compliance.**

A federal court's subpoena power is not limited to individuals only subject to personal

jurisdiction in that court.  The Court need only to consult the language of Fed. R. Civ. P. 45 to see that this is so.  The rule references the "issuing court" and the "place of compliance."  The issuing court is the court where the action is pending.  *See* Fed. R. Civ. P. 45(a)(2).  The place of compliance must be within 100 miles of where the person, resides, is employed, or regularly transacts business.  *See id.* at 45(c).  Notably, the issuing court need not be within 100 miles of where the person resides, is employed, or regularly transacts business.  Indeed, if the issuing court is not within 100 miles of where the person resides, is employed, or regularly transacts business, then the court for the district where compliance is required is charged with enforcing the subpoena.  *See id.* at 45(d), (g).  In other words, the court for the district where compliance is required is the court that compels a party to respond to a subpoena, that quashes subpoenas, and holds noncompliant parties in contempt.

By definition, the court for the district where compliance is required has personal jurisdiction over a subpoenaed person because it is where the subpoenaed person resides, is employed, or regularly transacts business.  Residing, being employed in, or regularly transacting business in a forum certainly satisfies the minimum contacts and due process requirements of the United States Constitution.  *See Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) ("[D]ue process requires only that in order to subject a defendant to a judgment in personam . . . he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice").  Therefore, Fed. R. Civ. P. 45 incorporates and accounts for due process considerations, and renders personal jurisdiction arguments regarding subpoenas moot.

The Advisory Comments to Fed. R. Civ. P. 45 say the same.  Specifically, the comments recognize that the 2013 Amendments "permit nationwide service of a subpoena."  *See* Fed. R.

7

Civ. P. advisory committee notes.  However, "[t]o protect local nonparties, local resolution of disputes about subpoenas is assured by the limitations of Rule 45(c) and the requirements . . . that motions be made in the court in which compliance is required under Rule 45(c)." *Id.*

Here, the Subpoena complied with all the requirements of Fed. R. Civ. P. 45.  It issued out of the Southern District of Ohio.  Fed. R. Civ. P. 45(a)(1) and (2).  The place for compliance in the Subpoena is in Tukwila, Washington, twenty-six miles from Birch's office.  (*See* Subpoena, Mot. Exh. A, Doc. 1-1).  This satisfies the 100-mile requirement of Fed. R. Civ. P. 45(c)(A).  That makes this Court, the Western District of Washington, the court for the district where compliance is required.  It is this Court that has the power to enforce or quash the subpoena—not the Southern District of Ohio.  And Birch is without a doubt subject to personal jurisdiction in this Court.  (*See* J. Birch Decl. ¶ 1, Sept. 30, 2022, Mot. Exh. B, Doc. 1-2, hereafter, "Birch Decl.").  Birch's concerns regarding the jurisdiction of the Southern District of Ohio and Ohio's long-arm statute are mooted by the language of Fed. R. Civ. P. 45 itself. Therefore, the fact that the Subpoena issued from the Southern District of Ohio does not mean that Birch does not need to comply with it, because it is enforced here, in the Western District of Washington, which has personal jurisdiction over Birch.[2]

### 2.    The Case Law Petitioner Cites In Support Of Her Personal Jurisdiction Argument Is Either Antiquated Or Inapposite.

The case law Petitioner cites in support of her personal jurisdiction argument is wholly inapplicable here because this Court has personal jurisdiction over Birch and can compel her

---

[2]    In making this argument, Respondents do not concede that the Southern District of Ohio does not have personal jurisdiction over Birch.  Respondents simply argue that the question of whether the Southern District of Ohio has personal jurisdiction over her is irrelevant to her duty to comply with a properly issued subpoena where the place of compliance is in this district—the Western District of Washington.

compliance with the Subpoena.  Despite that fundamental flaw in Petitioner's argument, the case law she cites is antiquated or inapposite.

*Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413 (10th Cir. 1996), concerns an administrative subpoena issued by the Securities Exchange Commission.  *Id.* at 416.  Because Congress authorized worldwide service under the Securities Exchange Act, the question in *Knowles* was whether a Bahamian citizen had minimum contacts *with the United States* such that a federal court could enforce a subpoena over him.  *Id.* at 417.  The Tenth Circuit made clear that the only issue was whether the foreign national had sufficient contacts with the United States.  *Id.*  This inquiry is wholly inapplicable to this case; obviously Birch has minimum contacts with the United States.  Even more, she certainly has minimum contacts "within the district in which enforcement is sought" which is this Court.[3]

Both *Ariel v. Jones*, 693 F.2d 1058 (11th Cir. 1982), and *Elder-Beerman Stores Corp. v. Federated Dept. Stores, Inc.*, 45 F.R.D. 515 (S.D.N.Y. 1968) predate the modern Fed. R. Civ. P. 45 amendments by 31 and 45 years respectively.  In *Ariel v. Jones*, the 11th Circuit took issue with a federal court in Florida requiring compliance from an out-of-forum witness with a subpoena *in Florida*.  693 F.2d at 1060.  The court noted that an out of forum witness requires recourse "to the district court in the district of the witness's residence for the issuance and enforcement of a subpoena."  *Id.*  But the modern Fed. R. Civ. P. 45 solves this problem—it requires the issuance of a subpoena from the forum where the action is pending, but enforcement in the district court where the witness is located, giving the witness recourse in her local district court.  Remember that in the instant matter, the subpoena issued from the Southern District of

---

[3]    Likewise, *Gucci Am., et al v. Weixing Li*, 768 F.3d 122 (2d. Cir. 2014) concerns a subpoena to a non-U.S. citizen, and is inapplicable.

Ohio, but the place of compliance is here in Washington. Birch was never asked to come to Ohio, or to bring documents to Ohio. *Elder-Beerman* only considered whether a nonparty was sufficiently present in the district so as to subject it to legal process there. 45 F.R.D. at 516. That case has absolutely no bearing on the modern Fed. R. Civ. P. 45, and is also wholly inapposite because Respondents are not requesting compliance in Ohio. They are properly requesting compliance in this Court's district, which has personal jurisdiction over Birch. *See Europlay Cap. Advisors, LLC v. Does*, 323 F.R.D. 628, 630 (C.D. Cal. 2018).

At bottom, Birch's Motion is without merit. Every day, nonparty witnesses are subpoenaed for information in cases pending nationwide—both in federal and state court. And federal and state law provides mechanisms to allow that discovery to proceed with Due Process considerations in mind. Accepting Birch's argument would gut Fed. R. Civ. P. 45, hamstring litigants throughout the country, and make complex civil litigation virtually impossible. Not only is Birch's Motion wrong, it's wholly impractical. Respondents followed the letter of Fed. R. Civ. P. 45 to the tee, and thus Birch is obligated to comply with the Subpoena. Accordingly, Respondents request that the Court deny Birch's Motion to Quash in total.

### B. There Is No Basis For The Requested Protective Order.

Should her Motion to Quash fail, Petitioner requests that the Court enter a protective order limiting discovery to Birch's contacts with Ohio, and expressly excluding the phrase "arreglar sin salir." However, beyond conclusory statements, Petitioner has not demonstrated how the requested discovery subjects Petitioner to "annoyance, embarrassment, oppression, or undue burden or expense," that would entitle her to a protective order as required by Fed. R. Civ. P. 26(c). The party seeking to limit discovery has the burden of proving "good cause," which requires a showing "that specific prejudice or harm will result" if the protective order is not

granted.  *Schreib v. Am. Fam. Mut. Ins. Co.*, 304 F.R.D. 282, 284–85 (W.D. Wash. 2014). Petitioner's request for a protective order fails for three reasons.  First, Petitioner did not meet and confer with counsel for Respondents before requesting a protective order.  Second, Petitioner has not provided the Court with particular evidence that compliance with the Subpoena would subject her to undue burden or expense.  Third, the Subpoena has been authorized by the Southern District of Ohio, and is narrowly tailored for its limited purpose.

First, LCR 26 requires a movant for a protective order not only to meet and confer with counsel, but to certify that such a meeting took place.  Birch's Motion contains no such certification, because no such meeting took place.  (Fraser Decl. ¶ 12).  For that reason alone, Birch's request for a protective order should be denied.  *See Quintana v. USAA Life Ins. Co.*, 434 F. Supp. 3d 932, 939 (W.D. Wash. 2020).

Next, Petitioner has not submitted any facts or evidence that demonstrate complying with the Subpoena would subject Petitioner to undue burden.  Indeed, Birch's Motion and declaration seem to prove the opposite.  Birch claims she has no information regarding the identity of the Doe Defendants.  (Mot. at 15).  Thus, it would seem reviewing and producing documents would not be time consuming, and her deposition would be short.  Respondents must be able to cross-examine Birch on these statements, particularly given the fact that her Motion and declaration also show that she does indeed appear to have information relevant to the Complaint and the Doe's identities.  (*Supra* at 4).

Birch claims that the identities of the Does would be best obtained from Internet companies.  But to the Stored Communications Act (the "SCA"), 18 U.S.C. §§ 2701 *et seq.* prevents Internet providers like Meta and Google from disclosing the contents of the defamatory communications.  Thus, while Plaintiffs are turning to those companies to identify individuals

who have reported them, the *content* of those reports, and the *content* of the messages coordinating the defamatory conspiracy must come from the users themselves. Therefore, discovery from individuals like Birch is necessary to identify the Doe defendants.[4]

Last, on its face, the Subpoena is not unduly burdensome. It seeks documents on four specific topics for a limited time period of two years. The deposition, likewise, imposes little burden because it is limited in scope. Because Petitioner has not supported her claims of undue burden with any specific evidence, her request for a protective order should be denied.

Finally, the Subpoena seeks information that is relevant to Respondents' Complaint, and that is the identity of the Doe Defendants. The Southern District of Ohio authorized subpoenas of individuals "to determine the extent of those individuals' knowledge regarding the defamatory campaign, and their knowledge of the defamers' identities." (*Id.*). That is all that Respondents seek from Birch. The requested information is narrow and relevant. Petitioner's request to limit the Subpoena to Birch's contacts with Ohio is an irrelevant inquiry, because personal jurisdiction is not at issue. Thus, there is no basis for the requested protective order.

Respondents remain willing to work with Birch to facilitate the document review and are committed to following the Order of the Southern District of Ohio, and limiting the deposition to uncovering the identities of the Doe Defendants. Thus, the protective order requested by Birch should be denied, and the discovery should proceed.

## Conclusion

For the reasons identified above, Respondents request that the Court deny Birch's Motion in its entirety, and that the deposition be scheduled in December, after Birch's maternity leave.

---

[4] Birch argues the Southern District of Ohio did not authorize document requests. Respondents disagree, but have petitioned the Southern District of Ohio for explicit authorization for document requests. Respondents will update this Court with any rulings.

Date: October 17, 2022                    Respectfully submitted,

   /s/ Isaac Castaneda
Isaac Castaneda
     LEAD ATTORNEY
Alexandra Lozano Immigration Law, PPLC
6720 Fort Dent Way, Ste. 230
Tukwila, WA 98188
[PHONE NUMBER]
[FAX NUMBER]
isaac@abogadaalexandra.com

Kirsten R. Fraser (0093951)
*PRO HAC VICE PENDING*
Organ Law LLP
1330 Dublin Road
Columbus, Ohio  43215
614.481.0900
614.481.0904 (f)
kfraser@organlegal.com
*Attorneys for Respondents*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on October 17, 2022, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system and was served on all counsel of record.

   /s/ Kirsten R. Fraser

*Attorney for Respondents*